

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| BRANDON QUINCY THOMPSON, | CIV. 12-4133 |
|  | CR. 09-40129 |
| Movant, |  |
|  | REPORT and RECOMMENDATION |
| -vs- |  |
|  |  |
| UNITED STATES OF AMERICA, |  |
|  |  |
| Respondent. |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Petitioner, Brandon Quincy Thompson ("Thompson"), is a federal inmate currently incarcerated at the Federal Correctional Institution in Atwater, California. He has filed a Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255.

The Court has taken judicial notice of the file from Thompson's underlying criminal conviction in the United States District Court, District South Dakota, Southern Division, CR 09-40129-01-KES and his direct appeal to the United States Court of Appeals for the Eighth Circuit, No. 11-1919.[1] *See, Hood v. United States*, 152 F.2d 431 (8th Cir. 1946) (federal District Court may take judicial notice of proceedings from another federal District Court); *Matter of Phillips*, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); *Green v. White*, 616 F.2d 1054 (8th Cir. 1980) (Court of Appeals may take judicial notice of District Court filings).

---

[1] Reference to Doc. numbers in this Report and Recommendation will be to the docket in this case unless otherwise noted.

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Order dated March 18, 2010.

## FACTUAL AND PROCEDURAL HISTORY

On November 21, 2009, Thompson was charged in a Complaint with Sex Trafficking of a Child in violation of 18 U.S.C. § 1591. On December 1, 2009, the Grand Jury issued a six count Indictment charging Thompson with: Sex Trafficking of Children in violation of 18 U.S.C. §§1591(a)(1), 1591(a)(2) and 1591(b)(2); Transportation of Children for Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a); and Obstruction of Sex Trafficking Enforcement in violation of 18 U.S.C. § 1591(d). The Indictment also contained a forfeiture count.

On April 7, 2010, the Grand Jury issued a twenty-one Count Superseding Indictment charging Thompson with: Sex Trafficking of Children in violation of 18 U.S.C. §§1591(a)(1), 1591(a)(2) and 1591(b)(2); Sex Trafficking by Force, Fraud or Coercion in violation of 18 U.S.C. §§1591(a)(1), 1591(a)(2), 1591(b)(1); Transportation of Children for Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a); Solicitation to Murder a Federal Witness in violation of 18 U.S.C. §§ 373 and 1512(a)(1); Obstruction of Sex Trafficking Enforcement in violation of 18U.S.C. § 1591(d); Sexual Exploitation of a Child in violation of 18 U.S.C. §2251(a); Transportation of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(a); Possession of Child Pornography in violation of 18 U.S.C.§§ 2252A(a)(5)(b) and 2256(8)(A); Possession of a Firearm in Relation to a Federal Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); Fraudulent Use of a Social Security Number in violation of 42 U.S.C. § 408(a)(7)(B); and Aggravated Identity Theft in violation of 18 U.S.C. § 1028(a)(1).

On October 5, 2010, the Grand Jury issued a twenty-six Count Second Superseding Indictment charging Thompson with: Sex Trafficking of Children in violation of 18 U.S.C. §§1591(a)(1), 1591(a)(2) and 1591(b)(2); Sex Trafficking by Force, Fraud or Coercion in violation of 18 U.S.C. §§1591(a)(1), 1591(a)(2), 1591(b)(1); Transportation of Children for Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a); Solicitation to Murder a Federal Witness in violation

2

of 18 U.S.C. §§ 373 and 1512(a)(1); Obstruction of Sex Trafficking Enforcement in violation of 18U.S.C. § 1591(d); Sexual Exploitation of a Child in violation of 18 U.S.C. §2251(a); Transportation of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(a); Possession of Child Pornography in violation of 18 U.S.C.§§ 2252A(a)(5)(b) and 2256(8)(A); Possession of a Firearm in Relation to a Federal Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A); Fraudulent Use of a Social Security Number in violation of 42 U.S.C. § 408(a)(7)(B); and Aggravated Identity Theft in violation of 18 U.S.C. § 1028(a)(1).

On November 16, 2010, Thompson appeared before the District Court, the Honorable Karen E. Schreier, and entered into a Plea Agreement. Pursuant to the terms of the Agreement, Thompson pled guilty to the charges contained in Counts 12 (Sex Trafficking of a Child–Victim #9) and 19 (Solicitation to Murder a Federal Witness) of the Second Superseding Indictment. Upon acceptance of Thompson's plea to Counts 12 and 19, the Government agreed to dismiss the remaining counts of the Second Superseding Indictment. In paragraph G of the Agreement, the Government agreed it would recommend a sentence of imprisonment of "no more than 360 months, regardless of the Guideline range." In that same paragraph, Thompson acknowledged that "any recommendation made by him or the United States is not binding on the Court." Thompson further acknowledged he "understands that he may not withdraw his plea of guilty if the Court rejects any recommendation." The final paragraph of the Plea Agreement (paragraph P) provided:

> The Defendant hereby waives all defenses and his right to appeal any non-jurisdictional issues. The parties agree that excluded from this waiver is the Defendant's right to appeal any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of his sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a).

Thompson's sentencing hearing was held on April 15, 2011. During the sentencing hearing, it was determined that Thompson's total offense level was $60^2$ (for an effective level of 43) and his criminal history category was 6, placing his both the statutory maximum and advisory Guideline range for Count 12 at life in prison and for Count 19 at twenty years imprisonment. *See* Sentencing

---

[2]Pursuant to Chapter 5, Pt. A of the Sentencing Guideline Manual, offense levels of greater than 43 are treated as 43 for purposes of applying the Advisory Guidelines.

Transcript p. 71, Doc. 138 in CR 09-40129. Judge Schreier sentenced Thompson to life in prison on Count 12 and 120 months in prison on Count 19, to be served consecutively. *Id.* at p.90. Judge Schreier did not abide by the sentencing recommendation (360 months) agreed upon between Thompson and the Government. Judge Schreier did, however, impose a sentence which was within the Guideline range, and did not impose an upward departure or variance which would have allowed Thompson to appeal pursuant to Paragraph P of the Plea Agreement.

On April 27, 2011, Thompson filed a direct appeal (Doc. 125 in CR 09-40129). *See United States v. Brandon Quincy Thompson*, No. 11-1919 (United States Court of Appeals for the Eighth Circuit). On direct appeal, Thompson asserted that although the District Court sentenced him within the Guideline range, the life sentence imposed constituted an abuse of discretion. Thompson also asserted that due process required that the District Court should have afforded him the opportunity to withdraw his guilty plea. The Eighth Circuit granted Thompson's request to file a *pro se* Brief. In his *pro se* Brief, Thompson asserted he was deprived of due process because the District Court failed to *sua sponte* order a competency evaluation/hearing before accepting his guilty plea. The Government moved to dismiss Thompson's direct appeal. After briefing was completed, on July 8, 2011, the Eighth Circuit granted the Government's motion to dismiss. Thompson then filed the instant § 2255 Motion to Vacate, Set Aside or Correct his Sentence.

## DISCUSSION

### 1.    Burden of Proof

In general, to state a claim for relief under 28 U.S.C. § 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing Court did not have jurisdiction to impose sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426-27, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).   The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction. *Skinner v. United States*, 326 F.2d 594, 597 (8th Cir. 1964).

4

## 2.     Principles Generally Applicable to § 2255 Petitions

The federal habeas corpus remedy found at 28 U.S.C. § 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).   A § 2255 cause of action is intended to correct an error which rises to the level of a  "fundamental defect" which "inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 427, 82 S.Ct. at 471.

Additionally, a collateral attack pursuant to § 2255 is not  interchangeable or substitutable for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  In other words, a petitioner is usually precluded from asserting claims in a § 2255 motion that he has failed to raise on direct appeal. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001).  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousely v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citations omitted).

Conversely, claims which were raised but rejected on direct appeal may not be re-litigated in a § 2255 petition. *United States v. McGee*, 201 F.3d 1022 (8th Cir. 2000); *United States v. Wiley*, 245 F.3d 750 (8th Cir. 2001).  Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly addressed in a § 2255 motion. *United States v. Looking Cloud*, 419 F.3d 781, 788-89 (8th Cir. 2005).  No procedural default analysis, therefore, is necessary before analyzing ineffective assistance claims.

To successfully maintain a claim for ineffective assistance of counsel, a habeas petitioner must prove his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* Court explained, however that

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [any particular] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining

5

> the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* 466 U.S. at 697, 104 S.Ct. at 2069. To show prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2052. Because hindsight analysis is problematical, courts "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005). Decisions involving trial strategy are therefore "virtually unchallengeable." *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006). Failure to file a motion that has little chance of success fails to meet *Strickland's* deficient performance or prejudice requirements. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990). It is with these general principles in mind that the claims contained in Thompson's § 2255 Petition have been considered.

### 3.    Analysis

For the reasons more fully explained below, Thompson's ineffective assistance claims should be dismissed on the merits, and no evidentiary hearing is necessary:[3]

### A.    First Claim for Relief: Ineffective Assistance of Counsel–Failure to Cross Examine Witness

In this claim, Thompson asserts that his counsel was ineffective for failing to cross-examine the victim and her father at the sentencing hearing. The victim was subpoenaed to appear but did not obey the subpoena. The Court reviewed her video-taped statement. The victim's father, however, testified that Thompson's actions resulted in his daughter contracting a sexually transmitted disease and that she suffers from anxiety attacks. Thompson claims "if [the victim] would have came up to court upon her subpoena that was served to her the court and defendant could

---

[3]Thompson has filed several Supplements and Amended Motions. For a summary of which amendments and supplements have been allowed, *See* this Court's Order dated February 25, 2013. Doc. 39.

6

have evaluated her demeanor and assess [her] credibility. Due to not showing the defendant was deprived of his right to cross-examine."

The analysis of this claims begins with the basis premise that "hearsay is admissible in sentencing hearings." *United States v. Tucker*, 286 F.3d 505, 510 (8th Cir. 2002) (citations omitted).

> [T]he sentencing process does not carry the same evidentiary protections guaranteed during a criminal trial. In general, the rules of evidence do not apply at sentencing. This is not to say that there are no constitutional limitations on the use of hearsay evidence at such proceedings. A defendant may not be sentenced on the basis of misinformation of constitutional magnitude . . . A district court has wide discretion at sentencing as to the kind of information considered or its source. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

*United States v. Pratt*, 553 F.3d 1165, 1170 (8th Cir. 2009) (citations omitted, punctuation altered). Judge Schreier specifically found CS's hearsay statements reliable this instance. Sentencing Transcript at p. 52, Doc. 138 in CR 09-40129.

"The decision as to whether to cross-examine a witness is a tactical one well within the discretion of a defense attorney. Absent a showing that cross-examination was reasonably likely to affect the outcome of the sentencing proceedings, [the defendant] is unable to show prejudice necessary to satisfy the second prong of *Strickland*." *Turner v. United States*, 2009 WL 1664439 at *13 (M.D. Ala.). The Court applies the two-part test set forth in *Strickland* when evaluating an ineffective assistance at sentencing claim. To determine whether counsel was ineffective at sentencing the appropriate inquiry is whether there is a reasonable probability that but for counsel's alleged errors, the defendant's sentence would have been less harsh. *United States v. Guerrero*, 132 F.3d 1454 (5th Cir. 1997) (unpublished).[4] Thompson does not suggest how his trial counsel could

---

[4]Unpublished opinions have no precedential value in the Fifth Circuit. *Guerrero* is cited here because of its persuasive value and because the facts are similar to Thompson's claims in that the defendant claimed counsel was ineffective for failing to cross-examine a witness at sentencing.

have effectively cross-examined CS or her father at the sentencing hearing or how such cross-examination would have favorably affected his sentence. Because Thompson has not  established the likely value of cross-examination, he has not shown his counsel was ineffective.

For all of these reasons, it is respectfully recommended to the District Court that Thompson's First Claim for Relief be dismissed with prejudice and that no certificate of appealability be issued.

### B.    Second Claim for Relief: Ineffective Assistance of Counsel–Plea Was Not Knowing, Intelligent or Voluntary

In this claim, Thompson asserts his guilty plea was not knowing, intelligent and voluntary because of his alleged mental illness. During the plea colloquy, Judge Schreier asked Thompson if he had recently been treated for a mental illness or addiction to narcotic drugs. Thompson answered "no ma'am." Thompson argues because his own "severe mental disorder" prevented him from answering Judge Schreier's questions correctly, his counsel should have interrupted the proceedings to tell Judge Schreier that Thompson was then on psychiatric medication and had "been trying to kill himself throughout detention . . .and was currently being treated and seen daily by mental health staff due to his severe mental disorder."   In support of his claim, Thompson avers he had been taking Mirtzapine[5] daily and had taken a dose on the day of his plea.

Counsel addressed this claim in his Affidavit (Doc. 30-1).    Specifically, counsel explained that he had sufficient contact with Thompson to determine Thompson's "personality, intelligence and reasoning power." *Id.* at ¶ 2. Counsel further explained he did not detect signs of mental illness to the extent that Thompson could not understand the nature of the proceedings. *Id.* at ¶ 3. Counsel did not believe Thompson's suicide attempts were genuine. *Id.* at ¶ 4. Although counsel had represented mentally unstable clients in the past, he did not believe Thompson was mentally unstable. *Id.* at ¶ 6-7.

---

[5]Mirtzapine is the generic name for Remeron.  It is indicated for the treatment of major depressive disorder. www.rxlist.com . The information in the Presentence Report, however, indicates Thompson took Mirtzapine as a sleep aid. *See* Presentence Report at ¶ 278.

"A defendant is competent if [he] possesses a sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings." *United States v. Pacheco*, 641 F.3d 970, 974 (8th Cir. 2011). Even if suffering from a mental illness, a defendant's plea is valid "if the record demonstrates that he understood the charges against him, was not dissatisfied with the services rendered by this attorney, and entered his plea knowingly and voluntarily." *United States v. Murphy*, 572 F.3d 563, 569 (8th Cir. 2009) (citations omitted). In *Murphy*, as here, the defendant alleged that although he stated during the plea colloquy that he was not under the influence of any narcotics and fully understood the proceedings, in actuality his anxiety and depression rendered his plea unknowing and involuntary. Murphy's claim was rejected because he "appeared to possess a fundamentally accurate factual understanding of his current legal proceedings, including the criminal charges against him and the responsibilities of the judge, prosecutor, and defense attorney." *Id.* at 570. *See also United States v. Cox*, 294 F.3d 959 (8th Cir. 2002) (counsel not ineffective for failing to request psych exam, in part because defendant represented during plea colloquy the he understood the proceeding and court observed defendant's demeanor and found him rational and competent).

Thompson's claim is precluded by the Eighth Circuit's denial of his direct appeal. Claims which were raised but rejected on direct appeal may not be re-litigated in a § 2255 petition. *United States v. McGee*, 201 F.3d 1022 (8th Cir. 2000); *United States v. Wiley*, 245 F.3d 750 (8th Cir. 2001). Thompson was specifically granted permission to file his *pro se* Brief on direct appeal. In that Brief, Thompson made the same claim he makes here: that he was incompetent during the criminal proceedings, that a competency evaluation should have been conducted, and that his incompetency rendered his conviction and sentence invalid. Failure to file a motion that has little chance of success fails to meet *Strickland's* deficient performance or prejudice requirements. *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1990). The Eighth Circuit considered Thompson's incompetency claims and summarily rejected them. Because Thompson's incompetency claims would not have been successful, counsel was not ineffective for failing to raise them.

Second, Thompson has presented no credible evidence that his plea was not knowing, intelligent and voluntary. The Presentence Report detailed Thompson's interaction with mental

9

health professionals during his pre-trial detention at the Minnehaha County Jail. Thompson attached to one of his submissions (Doc. 60) some of the progress notes from the jail mental health staff. The notes indicate Judge Schreier was kept apprised of Thompson's status during his pretrial incarceration. *See* Doc. 60 EX D, note dated 5-28-10: "deputy stated that he cannot just move this inmate and that his lawyer and judge [have] been notified." There is no evidence that Thompson's alleged mental illness precluded his ability to consult with his lawyer and understand the proceedings. "The afflictions complained of–stress, lack of sleep, and general depression–are not the type of mental disease or defect rendering individuals mentally incompetent. As we have noted, the presence of a mental illness does not equate with incompetency to stand trial." *United States v. Minnis*, 489 F.3d 325, 339 (8th Cir. 2007) (citation omitted). Also, diagnosis of a mental illness does not render a plea invalid if the defendant "was responsive and engaged during the Rule 11 colloquy." *United States v. Rollins*, 552 F.3d 739, 741 (8th Cir. 2009). "Even if suffering from a disease, a defendant's plea is valid if the record demonstrates that he understood the charges against him, was not dissatisfied with the services rendered by his attorney, and entered his plea knowingly and voluntarily." *Id.* at 741-42. Likewise, "the consumption of prescription medication is irrelevant" if the defendant told the Court during the colloquy he was not under the influence of any mind-altering substances. *Id.* Judge Schreier had the opportunity to question Thompson during the plea colloquy and to observe his demeanor and behavior. Trial counsel as well had the opportunity. Neither detected incompetence. Even assuming the truth of Thompson's assertion that he was depressed and taking Mirtzapine, that is not enough to show he was incompetent to enter a guilty plea. Thompson has failed to show that counsel's failure to interrupt the plea proceedings to point out to Judge Schreier what she already knew (that Thompson had made suicidal gestures during his pretrial detention and had been treated accordingly) constituted deficient performance or that it caused Thompson any prejudice under *Strickland*.

For all of these reasons, it is respectfully recommended to the District Court that Thompson's Second Claim for Relief be dismissed with prejudice and that no certificate of appealability be issued.

10

### C.   Third Claim for Relief: Ineffective Assistance of Counsel–Failure to Request of Competency Hearing and Failure to Investigate Mental Health

In this Third Claim for Relief, Thompson essentially re-hashes his Second Claim for Relief except that he adds his counsel should have been aware of his pre-existing mental problems because of information that was disclosed during his initial appearance before the undersigned.[6]  The recording of the initial appearance has been reviewed. During that proceeding, Thompson disclosed he had been treated for a mental or emotional condition "but that was years ago." Thompson indicated he had attempted suicide during an earlier incarceration, in 2002 or 2003. He also stated he'd been put on medications after his earlier suicide attempt but (1) that he was no longer required to take those medications and (2) he was presently not required to take medications for any purpose other than a condition related to his arm. When asked whether he had missed any medications he was supposed to have taken, for an emotional condition, Thompson responded "I don't take medication." He also indicated the last time he had consulted with a medical professional regarding his emotional condition was in 2002 or 2003.     That Thompson was treated for an emotional condition six or seven years before his guilty plea in this case, for which he denied ongoing treatment, adds nothing of substance to his ineffective assistance of counsel claim.

It is respectfully recommended to the District Court that Thompson's Third Claim for Relief should be denied with prejudice for same reasons explained above regarding his Second Claim for Relief, and that no certificate of appealability should issue.

### D.   Fourth Claim for Relief: Ineffective Assistance of Counsel–Failure to Review Evidence, Failure to Show Thompson Evidence [7]

In this claim, Thompson asserts his trial counsel was ineffective for failing to adequately review and share evidence with Thompson. Specifically, Thompson alleges he was only allowed to review some of the video-taped witness interviews and did not see the search warrants which

---

[6]The initial appearance on the Complaint occurred on November 23, 2009.

[7]This claim is one which was allowed by the Court's Order dated February 25, 2013 (Doc. 39). It appears in Thompson's Amended Petition (Doc. 25) as Ground Six.

were issued in his case.  He also claims he never heard the tape recorded phone conversation in which he threatened the life of a witness.  Thompson alleges he "pled guilty to serious federal crimes, carrying the potential for a long prison sentence. Mr. Thompson's attorney's did little to no work to effectively defend and represent Mr. Thompson during his case, and for his sentencing." Thompson makes these claims despite answering (under oath) "yes Ma'am" when Judge Schreier inquired during the change of plea hearing whether he was "fully satisfied with the counsel, representation, and advice  that [he had] received from Mr. Meierhenry?"  *See* Change of Plea Transcript, Doc. 135, p. 3-4 in CR 09-40129-01.

Counsel addressed these claims in a supplemental Affidavit. Doc. 49-1. Counsel explained Thompson reviewed many of the videos in a non-rushed fashion and commented on his perception of the various witnesses' veracity.  Counsel asked Thompson to provide support for Thompson's version of the facts to dispute the witnesses' statements, but Thompson was unable to provide anything. *Id.* In fact, Thompson was unable to provide counsel with any information which would assist in his own defense.   Counsel also stated in his first Affidavit that the evidence against Thompson was "overwhelming." Doc. 30-1, ¶ 11.

The two-part *Strickland* test applies to challenges to guilty pleas based on claims of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).   Under *Hill*, in order to show prejudice  the movant  must show that counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, Thompson  must show "that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*, 474 U.S. at 59, 106 S.Ct. at 370.  *See also Thomas v. United States*, 27 F.3d 321, 325 (8th Cir. 1994) (Movant's § 2255 petition denied; "[Movant's] present attempt to withdraw his guilty plea reflects only his dissatisfaction and disappointment that he received a more severe sentence than he anticipated.").

No hearing is necessary and a § 2255 motion can be summarily dismissed if (1) the movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted

as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105, (8ᵗʰ Cir. 2011).

> It is . . .recognized that in the specific context of habeas petitions challenging guilty pleas, allowing indiscriminate hearings in federal postconviction proceedings . . .would eliminate the chief virtues of the plea system–speed, economy, and finality. *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1628, 52 L.Ed.2d 136 (1976).
>
> This is because the advantages provided to the criminal justice system through the guilty plea and the often concomitant plea bargain can be secured only if the dispositions by guilty plea are accorded a great measure of finality. Thus, once a person has entered a guilty plea any subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. Additionally, a district court is not required to conduct an evidentiary hearing on allegations which amount to no more than a bare contradiction of statements petitioner made when he pled guilty.

*Tran v. Lockhart*, 849 F.2d 1064, 1067-68 (8ᵗʰ Cir. 1988) (citations omitted, punctuation altered). Because Thompson does not allege there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial, he cannot prevail on his ineffective assistance claim as it pertains to the guilty plea.

In his Response (Doc. 60) Thompson asserts his inability to properly review evidence also caused his sentence to be adversely affected. "In the context of sentencing, prejudice is established if the defendant demonstrates a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence." *Vinson v. United States*, 2013 WL 6271908 at *5 (S.D. W. Va.). Thompson theorizes he lost his acceptance of responsibility "departure" because he was "ambushed" by the evidence which induced him to deny claims at sentencing. *Id.* at p. 9. He also asserts his inability to challenge the factual allegations made by the witnesses and victims "attributed to sky rocketing his base offense level to 60, and placed [him] in the range of life imprisonment, as to the sentencing guidelines." *Id.* Thompson's claims are factually and legally unsustainable.

Thompson did not receive a three level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Thompson's offense level was 60 . His criminal history category was VI. If

13

Thompson had received a three level reduction for acceptance of responsibility, therefore, his guideline range would have remained life in prison. Further, Judge Schreier explained during the sentencing hearing that

> Under the presentence report, the total offense points were actually 60 points, but because of the provision in Chapter 5, part A, it indicates that it would be treated as a level 43. So the defendant was actually 17 points above the very top end of the advisory guideline range. And I did not find that there was any reason either for a departure or for a variance to go lower than what the advisory guideline range is. *I also wanted to note that there were multiple instances that the defendant objected to two point enhancements, and even if I had granted those objections, he still would have ended up at an offense level of 43 with an advisory guideline range of life. So I would have imposed the same sentence even if I made an error with regard to any of the two point enhancements that were applied.*

*See* Sentencing Transcript, Doc. 138 at p. 92 in CR 09-40129. Thompson's counsel objected to many of the factual claims in the Presentence Report, but Judge Schreier overruled the objections based upon the testimony of the case agents at the sentencing hearing and her finding that the claims made by the various victims were corroborated and substantiated by other record evidence. Thompson has not identified any **specific** substantive evidence or factual allegation not addressed at the sentencing hearing that, had it been addressed to his satisfaction, would have lowered his offense level to anything below 43 –placing his advisory guideline level at life in prison. Thompson has failed, therefore, to demonstrate a reasonable probability that but for counsel's alleged errors, he would have received a more favorable sentence.

Thompson claims that counsel's failure to sufficiently review the case evidence with him affected: (1) his decision to enter into the plea agreement and/or (2) the sentence ultimately imposed by Judge Schreier. For the reasons more fully explained above, Thompson's Fourth Claim for Relief fails because he has not sufficiently alleged prejudice on either front. It is therefore respectfully recommended to the District Court that Thompson's Fourth Claim for Relief be dismissed with prejudice and that no certificate of appealability be issued.

14

E.   **Fifth Claim for Relief: Ineffective Assistance of Counsel–Failure to Research, Write or Submit a Sentencing Memorandum**

F.   **Sixth Claim for Relief: Ineffective Assistance of Counsel--Failure to Attend Presentence Investigation Report Interview, Failure to Respond to Factual Allegations in Presentence Investigation Report[8]**

These two related claims are combined for purposes of determining whether Thompson has sufficiently stated an ineffective assistance of counsel claim. In his Amended Petition (Doc. 25) Thompson asserts counsel failed to attend the presentence interview, failed to write/submit a Presentence Memorandum, and failed to respond to the factual allegations in the Presentence Report. Thompson asserts that he "pled guilty to serious federal crimes, carrying a long prison sentence" and that his attorneys had plenty of time to "inform the court of every mitigating factor legally available to Mr. Thompson, and there were many mitigating factors." Thompson further asserts his attorneys "did not effectively represent him in this case." In his Response (Doc. 60) Thompson explained that counsel should have highlighted Thompson's past and present mental health issues. *Id.* at p. 10. He also reiterated counsel should have prepared a proper Mitigation Memorandum. *Id.* at p. 12. Thompson theorizes that counsel's failure to submit a sufficient Sentencing Memorandum "caused movant to be sentenced to a natural life sentence." *Id.* at p. 13.

Counsel responded to these claims in his second Affidavit, Doc. 49-1. Counsel could not recall any mitigating evidence that was not submitted. He believed Thompson's view of mitigating evidence would not be viewed as mitigating evidence by the Court. Counsel did not recall mitigating evidence that was available to present. *Id.* at p.2. Counsel did recall that Thompson's mother refused to testify. *Id.* Counsel reviewed the Presentence Report and submitted objections he believed beneficial to Thompson. He does not recall receiving any complaints from the probation officer for failing to cooperate in the Presentence Report process.

Counsel did not submit a document entitled "Sentencing Memorandum" but he submitted a document objecting to thirty-two separate paragraphs of the Presentence Report. Many of the

_____

[8]These claims appear as Grounds Seven and Eight in Thompson's Amended Petition, Doc. 25.

15

objections challenged the factual accuracy of the information in the Presentence Report, and other objections challenged the technical correctness of the manner in which the Advisory Sentencing Guidelines were applied. Because of counsel's objections, Judge Schreier required evidence to be presented during the Sentencing Hearing to determine whether the factual information contained in the Presentence Report was sufficiently reliable and whether it would be considered for sentencing purposes. Judge Schreier heard counsel's arguments at the Sentencing Hearing about whether the Advisory Guidelines had been appropriately applied to calculate Thompson's offense level for purposes of the appropriate Advisory Guideline sentencing range.

For the reasons already explained, Thompson failed to show counsel's failure to request a competency hearing constituted ineffective assistance of counsel as it applied to the plea proceedings. Those same reasons apply as to the sentencing phase. Similarly, Thompson's claim that Judge Schreier was unaware of and did not consider his mental health issues when she determined his sentence is contradicted by the record. Judge Schreier read the Presentence Report which outlined Thompson's pretrial detainment suicidal gestures and resulting treatment. *See* Presentence Report, Part C. Offender Characteristics, Mental and Emotional Health (¶¶ 275-279). Also, 18 U.S.C. § 3553(a) requires the District Court to consider certain factors when imposing sentence. That statute provides in pertinent part:

(a) **Factors to be considered in imposing a sentence.**–The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most cost effective manner;

16

The defendant's mental health is considered a "characteristic of the defendant" for purposes of § 3553(a)(1). *United States v. Austad*, 519 F.3d 431, 436 (8th Cir. 2008).[9] During the Sentencing Hearing, Judge Schreier specifically stated she had considered the § 3553(a) factors. *See* Sentencing Transcript, Doc. 138, p. 92.   The Court is not required to "categorically rehearse" each of the § 3553(a) factors so long as it is clear they were considered.  *Id.*  The sentencing judge "is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.*, *citing Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007).  Because Thompson's mental health was discussed in the Presentence Report and Judge Schreier specifically stated during sentencing that she considered the relevant § 3553(a) factors, Thompson has failed to demonstrate  any prejudice which can be attributed to counsel's failure to specifically mention Thompson's  mental health in a Sentencing Memorandum or at the Sentencing Hearing.   Thompson states there were "many mitigating factors" but he identified no other mitigating evidence.  A petition which "consists only of conclusory allegations, unsupported by specifics or allegations that, in the face of the record are wholly incredible, is insufficient . . ." *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (citations omitted, punctuation altered).

Thompson also suggests counsel should have "submitt[ed] evidence from defense witnesses for several of the false allegations outlined in the Presentence Report."  In his Response, Thompson named several potential witnesses[10]  he claimed would have contradicted some of the statements made by CS in her taped interview and by CS's father at the Sentencing Hearing.  Thompson also

---

[9]The *Austad* Court noted that a defendant's mental illness evidence can "cut both ways."  It may suggest  nothing but self-destructive behavior but it may also suggest  impulsiveness which would  compel a defendant to act in a similarly criminal fashion again in the future. "In any event, the district court is in a much better position to make such determinations, and we are not free to substitute our judgment for that of the district court when the district court's determinations are not unreasonable." *Austad*, 519 F.3d at 436, fn.7.

[10]. Counsel's Supplemental Affidavit (Doc. 49-1) explains witnesses Thompson provided to counsel were contacted if they could be found.  Thompson's mother refused to testify.  Thompson provided counsel with  no information about witness with helpful sentencing information.

claims his mother would have testified on his behalf. Thompson provides nothing to support these claims except his own bare speculation about what the purported witnesses would have said at sentencing. He did not provide affidavits from his purported witnesses verifying : (1) they were actually willing to testify or (2) the substance of their testimony. This is insufficient to "undermine confidence in the outcome" of Thompson's sentencing. *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989). Because he has offered mere speculation that his purported witnesses would have provided any favorable evidence, Thompson has not made the required showing of prejudice under *Strickland*. *Id*.

For the reasons more fully explained above, it is respectfully recommended to the District Court that Thompson's Fifth and Sixth Claims for Relief be denied with prejudice and that no certificate of appealability be issued.

### G.   Seventh Claim for Relief: Ineffective Assistance of Counsel–Failure to Contact and Interview Witnesses[11]

In this claim, Thompson asserts he provided counsel with the names of six witnesses "for his defense." He further asserts his counsel did not contact any of the witnesses "who would have provided evidence for his case, at trial and at his sentencing hearing." Thompson expanded on this claim in his Response (Doc. 60) wherein he named four purported witnesses (Jovan Banister[12], Tasha Pruitt, Megan Hayes, and Thompson's mother) who would have "willing and ready to give truthfully testimony, either during the trial phase or at sentencing." Thompson asserts that Banister, Pruitt and Hayes would have offered impeachment evidence regarding statements made by CS in her video taped witness interview and by CS's father during the sentencing hearing. Thompson also asserts his mother would have offered testimony about Thompson's mental health history and "other factual events that would have contradicted Shenkel's allegations in the PSR." Thompson asserts his counsel "dropped the ball on trying to contact these witnesses for the movant. Which would have

---

[11]This claim is listed as Ground Eleven in Thompson's Amended Petition, Doc. 25.

[12]Jovan Banister is Thompson's half-brother.

18

made a big difference during the sentencing hearing. By shedding light on the false allegations of the Government and literally humanizing the Movant." Doc. 60 at p. 14.

Counsel addressed Thompson's allegations in his second Affidavit, Doc. 49-1. Counsel explained he contacted all witnesses suggested by Thompson if they could be located and that Thomson's mother refused to testify. Thompson suggested no witnesses who had information helpful to sentencing issues. Again, Thompson has offered nothing but his own bare speculation that: (1) the purported witnesses he identifies in his Response would have been willing to testify and (2) the substance of their testimony would have been beneficial. Without more, Thompson's speculation is insufficient to "undermine confidence in the outcome" of Thompson's case. *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989). Because he has offered mere speculation that his purported witnesses would have provided any favorable evidence, Thompson has not made the required showing of prejudice under *Strickland*. *Id*.

Although Thompson claims his mother should have been called as a witness at sentencing, counsel avers Thompson's mother was unwilling to testify. Counsel cannot be faulted for failing to force Thompson's mother to testify at sentencing.

> The decision to call family members as witnesses is a strategic decision. Thus [a defendant] must overcome a strong presumption that his counsel's actions constituted reasonable trial strategy. Decisions relating to a witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight. We find that counsel's decision not to compel [defendant's] family to testify was entirely reasonable. It makes little sense to force unwilling family to testify in mitigation. If counsel had done so, cross-examination wouldn't even have been necessary in order to hurt [defendant's] case. The simplest questions asked on direct examination would have revealed the relatives total lack of support. Hostile and grudging testimony by [defendant's] family could well have been more damning evidence than anything presented by the prosecution.

*Walls v. Bowersox*, 151 F.3d 827, 834 (8th Cir. 1998). The *Walls* Court held that the defendant failed to prove either prong of the *Strickland* standard because "the value of this unoffered testimony must be substantial to prove prejudice" and the purported testimony did not meet the threshold. *Id*. The same is true here. Thompson has failed to sufficiently identify any unoffered witness testimony of

19

substantial value, or unoffered testimony which undermines confidence in the outcome of his case. He cannot, therefore show prejudice under *Strickland.*

For all of these reasons, it is respectfully recommended to the District Court that Thompson's Seventh Claim for Relief be denied with prejudice and that no certificate of appealability be issued.

### H.    Eighth Claim for Relief:   Ineffective Assistance of Counsel–Failure to spend adequate time with Thompson, Failure to Explain all the Details of the Case, Failure to Fully Explain Trial Option[13]

In this claim, Thompson asserts his counsel did not spend enough time with him and did not explain any details about nor give Thompson the option of going to trial but only pressured him to plead guilty. Thompson claims his counsel did not explain "all strategies and possible scenarios in full detail for his defense, so that he could be made fully aware of his options, because they were always too busy with their private clients."    Thompson did not expand further on this claim in his Response (Doc. 60).

In his second Affidavit (Doc. 49-1) counsel indicated he fully explained the trial option to Thompson and that trial was "seriously contemplated." Counsel did not pressure Thompson to plead but did explain the benefits.    Counsel believed the trial option was hampered because of the substantial evidence against Thompson. Counsel described Thompson as a "very demanding" client but counsel believed Thompson received the time and attention necessary for proper representation. Counsel believed the evidence against Thompson was "overwhelming" and there was no probability of success at trial. Meierhenry Affidavit, Doc. 30-1 at ¶11, Supplemental Affidavit (Doc. 49-1) at p. 2-3.

Thompson indicated under oath during the change of plea hearing that (1) he was fully satisfied with the counsel, representation and advice he'd received from counsel; (2) no one had made any promise or assurance to him that was not in the plea agreement or plea agreement supplement to try to persuade him to enter into those agreements; (3) no one threatened him in any

---

[13]This claim is stated as Ground Fourteen in Thompson's Amended Petition, Doc. 25.

way to persuade him to enter into the plea agreements; (4) no one forced him to plead guilty; and (5) he was pleading guilty of his own free will because he was in fact guilty. *See* Change of Plea Hearing, Doc. 135, p. 3-5 in CR 09-40129. In the face of these representations during the Plea Hearing, Thompson's conclusory allegations that he was not satisfied with counsel's advice or that counsel pressured or coerced him into pleading guilty are wholly inadequate to justify § 2255 post-conviction relief.

> While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings. Thus, a petition which consists only of conclusory allegations that, in the face of the record, are wholly incredible, is insufficient to overcome the barrier to an evidentiary hearing on a section 2255 motion.

*Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985). Thompson's vague allegation that counsel pressured him to plead guilty and failed to explain the details of his case fail to overcome the presumption of verity that attached to the specific representations Thompson made to the contrary during his plea colloquy. *Id.* at 1309.

For all of these reasons, it is respectfully recommended to the District Court that Thompson's Eighth Claim for relief be denied with prejudice and that no certificate of appealability be issued.

### 4.    Other Pending Motions

#### A.    Motions for Extension of Deadlines (Doc. 47 and 56)

These Motions both request extensions of time for Thompson to file his Response (Doc. 60) because Thompson was moved to a different correctional facility. Thompson filed his Response and it has been considered. The motions are GRANTED.

#### B.    Motion for Discovery (Doc. 54)

In this Motion, Thompson seeks from the prosecution several categories of information. He desires (1) his former counsel's client calendar and cases from the time period covering Thompson's representation, (2) copies of all correspondence sent from Thompson to his counsel, (3) surveillance records from the Minnehaha County Jail, (4) the outgoing legal mail log from the Minnehaha County Jail and (5) "any and all records" in the possession of Shelly Shenkel from the Federal Probation

21

office. Thompson explains he desires this information "will show factual evidence which will refute and contradict" his trial counsel's claims. He further explains "as a point of reference, Mr. Thompson has never seen his appeal nor was Mr. Thompson granted an opportunity to discuss his appeal with Mr. Meierhenry."

Rule 6 of the Rules Governing § 2255 proceedings provides in part:

(a) Leave of court required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. §3006A.

(b) Requesting Discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission and must specify any requested documents.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 1796-97, 138 L.Ed.2d 97, (1977). In the absence of a showing of good cause, a District Court does not abuse its discretion in denying a request for discovery in a § 2255 proceeding. *Smith v. United States*, 618 F.2d 507, 509 (8th Cir. 1980). Thompson's vague contention that the information he seeks will "show factual evidence" to contradict his counsel's Affidavit fails to meet the good cause standard for his overly broad discovery requests. Because Thompson has failed to show good cause for his discovery request and because Thompson's Motion to Vacate is otherwise without merit, the Motion for Discovery (Doc. 54) is DENIED .

## C.   Motion For Leave to File Supplemental Brief–*Alleyne* (Doc. 59)

Finally, Thompson seeks permission to file a supplemental Brief based on a recent United States Supreme Court case. In *Alleyne v. United States*, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime, which must be submitted to the jury and found beyond a reasonable doubt. *Id.*, 133 S.Ct. 2155. In support of his Motion, Thompson asserts "petitioner was judicially enhanced on crimes that violated his statutory minimum sentence. In clear violation of the Sixth Amendment, as interpreted in *Alleyne v. United States*."

22

*Alleyne* does not apply to Thompson's case. First, Thompson pled guilty to the charges which subjected him to the mandatory minimum sentence for his crimes (Sex Trafficking of a Child by Force, Fraud, or Coercion in violation of 18 U.S.C. §§ 1591(a)(1), 1591(a)(2), 1591(b)(1), 1591(b)(2) and 2(a) and (b)). These are Class A felonies, for which the mandatory minimum sentence was 15 years imprisonment. By pleading guilty Thompson waived his right to have a jury, rather than the District Judge, determine his guilt of the elements of the crime to which he pled. *See Hayes v. United States*, 2013 WL 5914400 at *3 (D.S.C.) (citations omitted) ("*Alleyne* did not change [the] rule that, when [the] Government seeks statutory sentencing enhancement, defendant's guilty plea and admissions during plea colloquy relieve [the] Government of the burden of proving facts to the jury beyond a reasonable doubt.").

Second, it appears Thompson misapprehends the import of *Alleyne*. In Thompson's case, the District Court's fact finding during the sentencing phase did not

> increase the legally prescribed sentencing floor. Rather, the court simply employed its sentencing discretion to impose a sentence within the range prescribed by statute. As to this aspect of sentencing, the court in *Alleyne* stressed that its holding 'does not mean that any fact that influences judicial discretion must be found by a jury.' Thus, the Court confirmed that district judges continue to be free to find facts in sentencing that do not increase the statutory minimum or maximum punishment.

*Jarrett v. United States*, 2013 WL 5508053 at *3 (W.D. Mich). *See also Manning v. United States*, 2013 WL 5890722 (W.D. Va.) at *1 (facts that do not alter the statutory maximum and minimum but only affect the amount of punishment within the applicable range are sentencing factors a court may consider in its discretion). Because Thompson pled guilty to the elements of the charges against him, *Alleyne* is inapplicable to his case.

Even assuming *Alleyne* applied to the facts of Thompson's case, it would nevertheless be unhelpful to Thompson.

> Generally, a new rule of law decided after a defendant's conviction becomes final may not be applied to that defendant's case on collateral review. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 223 (1989). There are, however, two exceptions to this rule. The retroactive application of a new rule is appropriate when: (1) the rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or otherwise prohibits imposition of a certain type of punishment for a class of defendants because of their

23

> status or offense; or (2) the rule announces a new 'watershed' rule of criminal
> procedure implicating the fundamental fairness and accuracy of the criminal
> proceeding.

*United States v. Potter*, 2013 WL 3967960 (E.D. Ky.) at *3. In *Potter* the Court explained that *Alleyne* is an extension of *Apprendi.*[14] *Apprendi* itself is not retroactive, and "[t]he Justices have decided that other rules based on *Apprendi* do not apply retroactively on collateral review. This implies that the Court will not declare *Alleyne* to be retroactive." *Potter*, 2013 WL 3967960 at *3. (citing cases). Although the Eighth Circuit has not yet explicitly decided, the Second, Fourth, Fifth, Seventh and Tenth Circuits have all held that *Alleyne* is not retroactive.[15] Even if the rule of *Alleyne* applied to the facts, therefore, it does not apply retroactively to Thompson's case on collateral review. For all of these reasons, Thompson's Motion to file a Supplemental Brief (Doc. 59) is DENIED.

## 5.   Evidentiary Hearing and Certificate of Appealability

If the motion, files and records of the case conclusively establish that the Petitioner is not entitled to relief, the Court is not required to conduct an evidentiary hearing. *Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012). There is no need for an evidentiary hearing in this case because it is clear from the record that the motion that Thompson has not raised a claim cognizable under 28 U.S.C. § 2255.

When the District Court has denied a motion under 28 U.S.C. § 2255, the Petitioner may not appeal without a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if a "court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.

---

[14]*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

[15]*United States v. Redd*, 735 F.3d 88 (2nd Cir. 2013); *United States v. Stewart*, 2013 WL 5397401 (4th Cir.); *In Re Kemper*, 735 F.3d 211 (5th Cir. 2013); *Simpson v. United States*, 721 F.3d 875 (7th Cir. 2013); *In Re Payne*, 733 F.3d 1027 (10th Cir. 2013).

24

1997).  Thompson has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability should likewise be denied.

## CONCLUSION, RECOMMENDATION and ORDER

For the reasons more fully explained above, it is **ORDERED:**

(1)     Thompson's Motions for Extension of Time (Doc. 47 and 56) are GRANTED;

(2)     Thompson's Motion for Discovery (Doc. 54) is DENIED;

(3)     Thompson's Motion to file a Supplemental Brief (Doc. 59) is DENIED;

It is further respectfully **RECOMMENDED** to the District Court:

(4)     That Thompson's Motion/Amended Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 1 & Doc. 25) be DENIED with prejudice and without a hearing and that no certificate of appealability be issued.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)

*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this **27** day of January, 2014.

BY THE COURT:

John E. Simko
United States Magistrate Judge

25