UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BRANDON QUINCY THOMPSON, | CR. 09-40129-01-KES |
| Petitioner, | (Civ. 12-4133-KES) |
| vs. | |
| UNITED STATES OF AMERICA, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| Respondent. | |

Petitioner, Brandon Quincy Thompson, an inmate in the Federal Correctional Institution in Atwater, California, moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Civ. 12-4133 (Civ. Docket) 1. This matter was referred to United States Magistrate Judge John E. Simko pursuant to 28 U.S.C. § 636(b)(1)(B) for the purpose of conducting any necessary hearings and issuing a report and recommendation for the disposition of Thompson's motion. Magistrate Judge Simko issued a report and recommendation for the disposition of Thompson's § 2255 petition. *See* Civ. Docket 64. Thompson filed timely objections to the report and recommendation. Civ. Docket 68. For the reasons set forth herein, Magistrate Judge Simko's report and recommendation is adopted.

**BACKGROUND**

On November 16, 2010, Thompson appeared before this court and entered into a nonbinding plea agreement. Under the terms of the agreement, Thompson pleaded guilty to the charges in Counts 12 (Sex Trafficking of a

Child–Child Victim #9) and 19 (Solicitation to Murder a Federal Witness) of the Second Superseding Indictment. CR 09-40129-01 (CR. Docket) 83. The United States agreed to dismiss the remaining counts of the Second Superseding Indictment following acceptance of Thompson's plea. In paragraph G of the agreement, the United States also agreed it would recommend a sentence of imprisonment of "no more than 360 months, regardless of the Guideline range." In the following sentence, however, Thompson acknowledged that "any recommendation made by him or the United States is not binding on the Court."

Thompson also acknowledged that "he may not withdraw his plea of guilty if the Court rejects any recommendation." Paragraph P of the Agreement contained a "Waiver of Defenses and Appeal Rights" provision, which stated:

> The Defendant hereby waives all defenses and his right to appeal any non-jurisdictional issues. The parties agree that excluded from this waiver is the Defendant's right to appeal any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of his sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a).

Thompson's sentencing hearing was held before this court on April 15, 2011. This court determined that Thompson's total offense level was 60, which the court treated as a level of 43,[1] and that his criminal history category was VI. This placed the statutory and advisory guideline range maximum for Count 12 at life in prison and for Count 19 at 20 years in prison. CR. Docket 138 at 71, 92 (Sentencing Transcript). Thompson was sentenced to life in

---

[1] *See* U.S. Sentencing Guidelines Manual, Ch. 5, pt. A., cmt. 2.

prison on Count 12 and 120 months in prison on Count 19, with both sentences to run concurrently. *Id.* at 90.

On April 27, 2011, Thompson filed a direct appeal to the Eighth Circuit Court of Appeals. CR. Docket 125. Thompson was permitted to file a pro se brief, in which Thompson argued he was incompetent due to an alleged mental illness, and that this court should have ordered a competency hearing. The Eighth Circuit summarily disposed of the appeal, granting the United States' motion to dismiss. CR. Docket 146 (*United States of America v. Brandon Quincy Thompson*, No. 11-1919 (8th Cir. 2011)).

On July 7, 2013, Thompson filed the present § 2255 motion to vacate, set aside, or correct his sentence. Civ. Docket 1. This matter was referred to United States Magistrate Judge John E. Simko pursuant to 28 U.S.C. § 636(b)(1)(B) for the purpose of conducting any necessary hearings and issuing a report and recommendation for the disposition of Thompson's motion. Subsequently, Thompson submitted several supplements and amended motions, some of which were granted while others were denied. *See* Civ. Docket 39. Ultimately, Thompson alleged several violations of his Sixth Amendment right to effective assistance of counsel, and he submitted several procedural motions. On January 27, 2014, Magistrate Judge Simko issued a report and recommendation for the disposition of Thompson's petition. Civ. Docket 64. Magistrate Judge Simko recommended that each of Thompson's claims for relief and requests be denied, with the sole exception related to Thompson's request for an extension of deadlines to file objections. Thompson

timely submitted his objections on March 14, 2014, in accordance with the extension deadline. *See* Civ. Docket 67; 68.

## LEGAL STANDARD

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. This court may review timely and specific objections to the magistrate judge's recommendations regarding nondispositive matters "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). Additionally, the court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

In order to establish ineffective assistance of counsel, a petitioner must meet the two-pronged standard articulated by the United States Supreme Court in *Strickland v. Washington. See* 466 U.S. 668, 687 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Id.* This "performance prong" requires a petitioner to "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. This court must assess "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. There is a "strong presumption,"

however, "that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  As the Eighth Circuit has observed, "reasonable trial strategy cannot rise to the level of ineffective assistance of counsel." *English v. United States*, 998 F.2d 609, 613 (8th Cir. 1993).

"Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. This "prejudice prong" requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In other words, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Furthermore, to show prejudice as a result of the plea process, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Finally, a petitioner has the burden of satisfying both *Strickland* prongs. *Strickland*, 466 U.S. at 687; *see also Burns v. Gammon*, 260 F.3d 892, 897 (8th

Cir. 2001). While both prongs must be satisfied, this court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* As the Eighth Circuit has held, failure to file a motion that has little chance of success cannot satisfy either the deficient performance or prejudice prong. *Hale v. Lockhart*, 903 F.2d 545, 549-50 (8th Cir. 1990).

## DISCUSSION

Thompson has alleged several claims of ineffective assistance of counsel. Magistrate Judge Simko recommended dismissal of each claim. Civ. Docket 64 at 6. Thompson has objected to the magistrate judge's recommendations and presented arguments in support of each objection. Additionally, Thompson has objected to several of the magistrate judge's orders regarding nondispositive, procedural motions. Thus, this court will conduct de novo review of those portions of the magistrate judge's recommendations with respect to Thompson's ineffective assistance of counsel claims that have been objected to, and it will apply a clearly erroneous or contrary to law analysis to the magistrate judge's orders regarding the nondispositive motions.

## A.   First Claim for Relief: Ineffective Assistance of Counsel–Failure to Cross-examine Witnesses

Thompson's first ineffective assistance claim is premised on counsel's failure to cross-examine a victim and her father during the sentencing hearing. The victim did not appear at sentencing, but the court considered her videotaped statement. CR. Docket 138 at 51-52. Her father testified, among other things, that his daughter contracted a sexually transmitted disease from Thompson. *Id.* at 82. Magistrate Judge Simko recommended dismissal of this claim because Thompson could not establish how counsel could have effectively cross-examined the witnesses or how that alleged failure resulted in prejudice. Civ. Docket 64 at 7-8. Thompson asserts that cross-examination would have demonstrated that the father was not credible, that medical records would have shown the victim had not contracted the disease from Thompson, and that counsel's failure to cross-examine the father led to a higher sentence. Civ. Docket 68 at 7.

As a preliminary matter, in addition to the victim's videotaped statement, several other victims as well as family members appeared before this court during the sentencing hearing to present victim impact statements. *See* CR. Docket 138 at 81-87. These witnesses were not put under oath, and neither party was given the opportunity to question them. The Eighth Circuit has held that "the rules of evidence do not apply at sentencing." *United States v. Pratt*, 553 F.3d 1165, 1170 (8th Cir. 2009) (citations omitted). A court "has wide discretion at sentencing as to the kind of information considered or its source," and "may consider relevant information without regard to its admissibility

under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *Id.* (quotations and emphasis omitted). Hearsay evidence may also be considered, provided it appears reliable. *United States v. Tucker*, 286 F.3d 505, 510 (8th Cir. 2002). Additionally, "the confrontation clause does not apply in sentencing proceedings." *United States v. Wallace*, 408 F.3d 1046, 1048 (8th Cir. 2005) (citing *United States v. Due*, 205 F.3d 1030, 1033 (8th Cir. 2000)). Specifically, with respect to the victim's videotaped statement, this court concluded there was "sufficient evidence to support the factual allegations here and there's sufficient indicia of reliability regarding [the] statement." CR. Docket 138 at 52. The magistrate judge noted this conclusion in the report and recommendation. With respect to the father's victim impact statement, Thompson's objection fails because even though counsel was not permitted to cross-examine the witness at sentencing, the confrontation clause does not compel a different result.

Nonetheless, even if counsel was permitted to cross-examine the father and chose not to, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689 (1984). This is so because "reasonable trial strategy cannot rise to the level of ineffective assistance of counsel." *English*, 998 F.2d at 613. Further, even if the decision to forego cross-examination was professionally unreasonable, Thompson's conclusory assertion that his inability to cross-examine a single statement resulted in a harsher sentence is not only unsupported but wholly contradicted by this court's determination of

Thompson's offense level, criminal history, and applicable sentencing range. *See* CR. Docket 138 at 71. As discussed, Thompson's offense level was 17 points higher than the guideline maximum, and his criminal history fell within category VI. This placed Thompson's guideline range sentence at life imprisonment for Count 12. Thompson cannot show how the failure to refute this one assertion resulted in any prejudice with respect to the sentence he received. For these reasons, Thompson's first claim is denied.

**B.    Second Claim for Relief: Ineffective Assistance of Counsel–Plea Was Not Knowing, Intelligent, or Voluntary**

Thompson's second claim for relief asserts that his guilty plea was not knowingly, intelligently, or voluntarily entered into because of an alleged mental illness. More specifically, Thompson assigns error to counsel's failure to apprise the court of Thompson's mental illness during the change of plea hearing. Magistrate Judge Simko recommended dismissal of this claim based on several considerations. For example, the magistrate judge found that counsel's affidavit states he did not believe Thompson was mentally unstable, and that Thompson's claim is precluded by the Eighth Circuit's denial of his direct appeal. Civ. Docket 64 at 8-9. Additionally, the magistrate judge found that the record contradicted Thompson's claims, and, even assuming Thompson was suffering from a mental illness, it would not have precluded him from entering a knowing, intelligent, and voluntary plea. *Id.* at 8-10. Thompson's objections allege that counsel did not explain the terms or effect of the plea agreement, that he was housed in a "Mental Health Unit," and that he was coerced into signing the agreement. Civ. Docket 68 at 8-9. Thompson's

objection appears incomplete, however, leaving off at "To demonstrate that Movant's guilty plea was involuntary," with no further explanation. *Id.* at 9. Thompson did not object to the magistrate judge's findings regarding Thompson's direct appeal or the court record.

In order to be entitled to de novo review, an objection to a portion of the Magistrate Judge's recommendations must be specific enough to identify to what is being objected. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); *see also* 28 U.S.C. § 636(b)(1). Without such an objection, this court may adopt the magistrate judge's findings, or, *sua sponte*, subject those findings "under a de novo [review] or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 154 (1985). During Thompson's direct appeal, he was allowed to file a pro se brief in which he asserted the same argument against the validity of the plea agreement as he asserts here, though now styled as an ineffective assistance claim. The Eighth Circuit summarily disposed of the appeal. *See* CR. Docket 146 (*United States v. Brandon Quincy Thompson*, No. 11-1919 (8th Cir. 2011)). If a claim has already been raised on direct appeal, it cannot be reasserted in a § 2255 petition. *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001); *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000). The magistrate judge found this to be fatal to Thompson's claim. Civ. Docket 64 at 9 ("Thompson's claim is precluded by the Eighth Circuit's denial of his direct appeal."). Because the Eighth Circuit granted the United States' motion to dismiss based on a lack of

jurisdiction,[2] however, it is unclear whether the Eighth Circuit reached the merits of Thompson's claim or what preclusive effect the ruling would have in this court. Although Thompson did not object to the magistrate judge's finding, this court need not adopt it in light of these uncertainties.

What does appear to be fatal to Thompson's claims, however, is that they are directly contradicted by the change of plea record. As the Eighth Circuit has explained, even if a defendant is suffering from a mental illness, the plea would be valid "if the record demonstrates that he understood the charges against him, was not dissatisfied with the services rendered by his attorney, and entered his plea knowingly and voluntarily." *United States v. Murphy*, 572 F.3d 563, 569 (8th Cir. 2009) (citation omitted); *see also Cox v. United States*, 294 F.3d 959, 960 (8th Cir. 2002). At the plea hearing, this court asked Thompson if he had "been treated recently for any mental illness or addiction to narcotic drugs of any kind," to which Thompson responded, under oath, "No, ma'am." CR. Docket 135 at 3. Additionally, Thompson was asked if he was "currently under the influence of any drug, medication, or alcoholic beverage of any [kind]," to which he responded "No, ma'am." *Id.* Thompson was asked if he "had a chance to discuss [the] charges and [his] case, in general, with [his] lawyer," to which he responded "Yes, ma'am." *Id.* Thompson was also asked if he was "fully satisfied with the counsel, representation, and advice [he]

---

[2] The entirety of the judgment provided: "The motion of appellee for dismissal of this appeal is granted. The appeal is hereby dismissed. See Eighth Circuit Rule 47A(b)." CR. Docket 146. The rule referenced provides for dismissal upon a party's motion that "the appeal is not within the court's jurisdiction." Eighth Cir. R. 47A(b).

received from [his lawyer]," to which he responded "Yes, ma'am." *Id.* at 3-4.

Thompson stated he had read and discussed the plea agreement with counsel

and that he understood its terms. *Id.* at 4. Moreover, Thompson indicated no

one had persuaded him or tried to force him to enter the plea agreement. *Id.*

Thompson was told that the terms of the plea agreement were merely

recommendations to the court, and that he could receive a harsher sentence

than he anticipated. *Id.* at 4-5. Again, Thompson responded that he

understood. *Id.* at 6; *see also id.* at 7 (Thompson indicating he understood the

maximum penalties he faced). Thompson was also told that his advisory

guideline range could not be determined until after his presentence report was

complete. *Id.* at 7-8. When asked if he understood this, Thompson responded

"Yes, I do." *Id.* at 8.  Finally, Thompson acknowledged the veracity of a factual

basis statement he reviewed and signed, which established each element the

United States would have been required to prove had the case gone to trial. *Id.*

at 12. Following these exchanges, and with the opportunity to observe

Thompson's demeanor throughout, this court concluded:

> [T]he Defendant is fully competent and capable of entering an
> informed plea, that he is aware of the nature of the charges and
> the consequences of the plea, and that the plea of guilty is a
> knowing and voluntary plea supported by an independent basis in
> fact containing each of the essential elements of both of the
> offenses.

*Id.* at 13. Thompson's newly discovered dissatisfaction with his attorney and

alleged lack of understanding during the change of plea proceedings are, in the

face of the record, not credible. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)

(explaining "contentions that in the face of the record are wholly incredible" are entitled to summary dismissal); *see also United States v. Journey*, 474 F.2d 1003, 1003-04 (8th Cir. 1973); *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003).

These defects aside, it is unclear what professional deficiency occurred or what prejudicial effect the alleged omission would have had on Thompson's plea hearing. Counsel's affidavit indicates he believed Thompson understood the nature of the proceedings as well as his actions, and that Thompson did not appear to show any behavior that would suggest he was suffering from a mental illness. Civ. Docket 30-1 at ¶¶ 3-6. Likewise, this court had the ability to question and observe Thompson during the plea hearing, and did not detect any abnormality. Additionally, as discussed, even if Thompson was suffering from a mental illness, "the record demonstrates that he understood the charges against him, was not dissatisfied with the services rendered by his attorney, and entered his plea knowingly and voluntarily." *Murphy*, 572 F.3d at 569 (citation omitted); *see also Cox v. United States*, 294 F.3d 959, 960 (8th Cir. 2002). Because a mental illness does not preclude entering a knowing, intelligent, and voluntary guilty plea, it cannot be said that counsel's failure to apprise the court of Thompson's alleged condition would constitute deficient performance or that Thompson suffered prejudice as a result. In light of the record, and because Thompson cannot satisfy the requirements of *Strickland*, Thompson's second claim is denied.

### C. Third Claim for Relief: Ineffective Assistance of Counsel–Failure to Request Competency Hearing and Failure to Investigate Mental Health

Thompson's third claim is similar to the second in that he alleges counsel should have requested a competency hearing because counsel was aware of Thompson's preexisting mental illness. Thompson specified that these facts were brought to counsel's and the court's attention during his initial appearance, and the presentence report chronicles several instances of his treatment. Magistrate Judge Simko recommended dismissal of this claim after reviewing the recording of Thompson's first initial appearance. Civ. Docket 64 at 11. Thompson objects to the magistrate judge's findings, primarily by focusing on counsel's lack of certification in the fields of psychiatry and psychology, concluding that counsel was ineffective for failing to request a competency hearing before he signed the plea agreement. Civ. Docket 68 at 10.

A motion to determine the competency of a defendant should be granted "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Competency is therefore not determined by the presence or appearance of a mental illness alone, but also by whether an individual had the "present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362

U.S. 402 (1960) (per curiam). If Thompson were unable to reasonably consult with his attorney or understand the proceedings against him, counsel's failure to seek a competency hearing can satisfy the *Strickland* test. *United States v. Luke*, 686 F.3d 600, 606 (8th Cir. 2012) (citing *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). As the Eighth Circuit has explained, however, "not every manifestation of mental illness demonstrates incompetency to stand trial." *Id.* (quoting *United States v. Turner*, 644 F.3d 713, 725 (8th Cir. 2011)).

Although no formal transcript of Thompson's two initial appearance hearings exists,[3] audio recordings are available. *See Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989) (directing that, in the absence of a transcript, a court must review a tape recording to provide de novo review). The court has reviewed the recordings of Thompson's November 23, 2009 and December 7, 2009, initial appearance hearings. At the November hearing, Thompson indicated he was treated for an emotional or mental condition "years ago," estimating the time frame between 2002 and 2003. He stated the purpose of that treatment was related to a suicide attempt while incarcerated. Although no formal diagnosis was made, Thompson explained that he had been prescribed medication. When asked if he was currently required to take any medication, however, Thompson responded he was only taking something for his arm. When asked if he had missed any recent medication, Thompson responded, "I don't take medication." Thompson further explained that the last time he

---

[3] Thompson waived his personal appearances following the Superseding Indictment and Second Superseding Indictment. CR. Docket 60, 70.

consulted with a medical professional for any emotional or mental condition was between 2002 and 2003. He also indicated he was able to understand what was taking place at the hearing.

Thompson's responses during the December 2009 initial appearance were similar, with a few variances. Thompson responded that he had been treated for a mental or emotional condition in 2001, rather than 2002 or 2003. Thompson also said he was diagnosed as being bipolar, although he had not required treatment since that time. During both appearances the magistrate judge was satisfied Thompson was competent to proceed with the hearings.

As discussed, counsel's affidavit states he did not detect any signs of mental illness, and he believed Thompson was capable of understanding his situation. Civ. Docket 30-1 ¶ 3. Counsel also states he had investigated Thompson's suicide attempts while Thompson was incarcerated and, based on counsel's experience of "representing hundreds of criminals," determined Thompson's behavior "[fell] into a regular jail pattern of fake suicides." *Id.* ¶ 4. According to counsel, Thompson did not appear to have any "real desire to take his own life." *Id.* ¶ 6. Counsel further stated he has represented other clients who appeared to be mentally unstable, but that Thompson did not exhibit any "behavior that would indicate to [him] that [Thompson] was mentally unstable." *Id.* ¶¶ 6-7. Though Thompson is correct that counsel was not certified in psychology or psychiatry, counsel's many years of experience in representing clients, some of whom displayed signs of mental illness and some of whom did not, give counsel's observations some credibility. Moreover, as detailed above,

this court also had the opportunity to observe and question Thompson during the plea hearing, and it determined Thompson was competent and capable of entering an informed plea.

Based on counsel's observations and the observations of this court, it appeared Thompson possessed the "present ability to consult with his lawyer with a reasonable degree of rational understanding" and that Thompson had "a rational as well as factual understanding of the proceedings against him." *See Dusky v. United States*, 362 U.S. 402 (1960). Although Thompson may have received some treatment for a mental or emotional condition several years before his initial appearances, he indicated he was no longer required to take medication for those conditions and had not met with a mental health professional for several years. Thus, there appeared to be no "reasonable cause to believe" Thompson was "suffering from a mental disease or defect rendering him mentally incompetent" for which this court would have ordered a competency hearing if one was requested. *See* 18 U.S.C. § 4241(a). Failure to file a motion that has little chance of success cannot satisfy either the deficient performance or prejudice prong. *Hale v. Lockhart*, 903 F.2d 545, 549-50 (8th Cir. 1990).

Although unavailable to counsel or this court until after the plea hearing, Thompson's reference to the presentence report would not change this analysis. The presentence report indicates Thompson had no history of mental health issues until after his arrest and describes the suicide attempts recalled in counsel's affidavit. PSR ¶¶ 275-76. As a result, Thompson met with John

- 17 -

Erpenbach, a certified nurse practitioner, in June 2010. *Id.* at ¶ 277.

Thompson was diagnosed with a form of substance abuse and depression, "not

otherwise specified." *Id.* Although mental health staff met with Thompson

regularly through June 2010, visits decreased to once per month as Thompson

informed them "I'm good. I'm done with that[.]" *Id.* Following the plea hearing,

Thompson's "behavior changed for the better." *Id.* at ¶ 278. The report also

provides that Thompson was not prescribed any psychotropic medication,

although he was taking a sleep aid. *Id.*

Thompson's change of plea hearing took place before this court on

November 16, 2010. CR. Docket 86. As discussed, Thompson responded to this

court's inquiries that he had not recently been treated for any mental illness or

prescribed any medication. By the time of the change of plea hearing,

Thompson was not prescribed any medication beyond the sleep aid, and visits

with mental health staff had been reduced to "short visits . . . once a month."

*Id.* at ¶ 277.  His statements during the change of plea hearing are consistent

with what later appeared in the presentence report.

 At no time during Thompson's initial appearances, change of plea

hearing, or sentencing hearing did Thompson respond or act in any way that

would provide a reason to believe he did not understand the proceedings or

was unable to assist his attorney. As the Eighth Circuit has explained, "the

afflictions complained of--stress, lack of sleep, and general depression--are not

the type of mental disease or defect rendering individuals mentally

incompetent." *United States v. Minnis*, 489 F.3d 325, 329 (8th Cir. 2007). It did

not appear to the court that there was "reasonable cause to believe" Thompson
was "suffering from a mental disease or defect rendering him mentally
incompetent" for which this court would have ordered a competency hearing if
one was requested. *See* 18 U.S.C. § 4241(a). Counsel's failure to file a motion
that would have little chance of success does not constitute ineffective
assistance of counsel. *Hale*, 903 F.2d at 549-50. For these reasons,
Thompson's third claim for relief is denied..

**D.    Fourth Claim for Relief: Ineffective Assistance of Counsel–Failure to Review Evidence or Show Thompson Evidence**

Thompson next alleges counsel was ineffective for failing to adequately
review and share evidence with Thompson. Specifically, Thompson claims he
was either prevented from reviewing or given too short of an opportunity to
review video and recorded evidence, and that counsel neglected to spend
enough time reviewing the evidence in preparation for Thompson's case, which
led to Thompson pleading guilty rather than going to trial. Magistrate Judge
Simko recommended dismissal of this claim, finding that both the record and
affidavit of counsel refute Thompson's allegations, and that, in any event,
Thompson could not satisfy *Strickland*'s prejudice requirement because
Thompson had not shown a reasonable probability that, but for counsel's
errors, he would not have pleaded guilty. Civ. Docket 64 at 11-13. Thompson
objects to the magistrate judge's recommendation, arguing that counsel's
failures to review and show Thompson evidence prevented Thompson from
being able to discredit the United States' allegations during sentencing, and

that Thompson would not have pleaded guilty but would have insisted on going to trial. Civ. Docket 68 at 11.

In counsel's affidavit, he notes that Thompson was "given full opportunity to view" video evidence, and that Thompson discussed evidence with counsel. Civ. Docket 49-1 at 1. Counsel stated that the option to go to trial was discussed, but that the evidence against Thompson was "overwhelming." *Id.* at 2; Civ. Docket 30-1 at ¶ 11. Further, counsel states that he discussed the probability of failure with Thompson, that he felt the plea agreement represented the best alternative available, and that there was "no way that the trial of this matter would result in an acquittal." Civ. Docket 30-1 at ¶¶ 12-15.

Counsel's affidavit is supported by Thompson's own statements before this court. As detailed above, this court questioned Thompson during the plea hearing whether he was afforded an opportunity to discuss his case with his attorney and whether he was fully satisfied with his attorney's performance. CR. Docket 135 at 3-4 Thompson responded to both inquiries, under oath, affirmatively. *Id.* Thompson's allegations here, regarding his attorney's performance and with respect to reviewing evidence, amount to no more than bare contradictions of his own statements given under oath at the plea hearing. *See Tran v. Lockhart*, 849 F.2d 1064, 1068 (8th Cir. 1988) (explaining that an evidentiary hearing is not required for " 'allegations which amount to no more than a bare contradiction of statements petitioner made when [the petitioner] pled guilty.' ") (quoting *Dunn v. Wyrick*, 679 F.2d 731, 733 (8th Cir. 1982)).

- 20 -

With respect to Thompson's ineffective assistance argument regarding the plea phase, even if the court were to determine that counsel's performance somehow fell below an objective standard of reasonableness, Thompson would still need to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). It is noteworthy that, in Thompson's own words during the sentencing hearing, he was willing to "accept full responsibility for [his] actions without any reservation," and that Thompson wanted his "punishment to be a message to current sex traffickers who are taking advantage of children and women and depriving them of their youth and adulthood for their personal gain." CR. Docket 138 at 74. It was only after this court rejected the parties' sentence recommendation in the nonbinding plea agreement that Thompson wished to change his mind. *See id.* at 93 ("I didn't want to take it to trial just because of the simple fact, if I would have lost, I would have got life, okay?"). Yet, Thompson was told that the plea agreement was merely a recommendation to this court, that it could be rejected, that, if it was rejected Thompson would not be allowed to rescind his plea, and that Thompson could be sentenced more severely than he anticipated. CR. Docket 135 at 4-5. When asked if he understood, Thompson responded "Yes, I do." *Id.* at 5. Thompson was also advised that he faced a potential sentence of life imprisonment, and when asked if he understood, he responded "Yes ma'am." *Id.* at 6-7. Thompson's argument, aided by hindsight and presented under the guise of ineffective assistance, appears to be that he

would have preferred going to trial after all because this court imposed the very sentence it warned Thompson he may receive. *See Thomas v. United States*, 27 F.3d 321, 325 (8th Cir. 1994) ("[Petitioner's] present attempt to withdraw his guilty plea reflects only his dissatisfaction and disappointment that he received a more severe sentence than he anticipated."). Thus, not only is Thompson's statement that he would have insisted on going to trial factually unsupported, but it is also contradicted by the record.

Finally, although not objected to by Thompson, the magistrate judge recommended dismissal of Thompson's argument that counsel was ineffective during the sentencing phase. Civ. Docket 64 at 13. According to Thompson, because he was unable to review certain evidence, he was forced to deny statements made by victims during the presentence investigation that caused Thompson to lose his acceptance of responsibility reduction. Civ. Docket 60 at 9. Thompson alleges he was also unable to counter statements by witnesses and victims that led to the "sky rocketing" of his base offense level to 60. *Id.* Counsel filed over 30 objections to the presentence report, however, not only to Thompson's loss of his acceptance of responsibility points, but also to several instances where two-point enhancements were applied. PSR App. 1, at 1-5. Following arguments by the parties, this court overruled counsel's acceptance of responsibility objection, concluding Thompson did not "take full responsibility for his role in this offense and for the conduct that comprises the offense of conviction." CR. Docket 138 at 61. Regarding the two-point enhancements, this court noted that, even if counsel's objections had been

- 22 -

sustained, Thompson "still would have ended up at an offense level of 43 with an advisory guideline range of life." *Id.* at 92. Although the confrontation clause does not apply to sentencing hearings, Thompson's statement that he would "discredit many of the evidence revealed" is too vague and conclusory to establish prejudice under *Strickland. See Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (explaining that, while pro se pleadings are liberally construed, that rule will not save a petitioner's allegations "if they are based on conclusory or non specific factual allegations.") For these reasons, Thompson's fourth claim for relief is denied.

**E.    Fifth Claim for Relief: Ineffective Assistance of Counsel–Failure to Research, Write or Submit a Sentencing Memorandum**

Because of the similarity between Thompson's fifth and sixth claims for relief, Magistrate Judge Simko considered both claims under the same analytical framework. Civ. Docket 64 at 15. Thompson's objections also treat the two together. Civ. Docket 68 at 11-12. Thus, this court will consider Thompson's fifth claim for relief together with his sixth claim for relief.

**F.    Sixth Claim for Relief: Ineffective Assistance of Counsel–Failure to Attend Presentence Investigation Report Interview, Failure to Respond to Factual Allegations in Presentence Investigation Report**

Thompson alleges that counsel failed to submit a presentence memorandum or respond to the allegations within the presentence report. Additionally, Thompson claims counsel did not submit a memorandum outlining mitigating factors that this court should have considered.  Thompson also alleges that counsel should have proffered testimonial evidence from several witnesses who would have refuted statements made by the victims and

family members at the sentencing hearing. Magistrate Judge Simko specifically
addressed each of Thompson's claims, and recommended dismissal of all. First,
the magistrate judge found that counsel did not submit a presentence
memorandum, but did submit 32 separate objections to the presentence report
that were addressed by this court. Civ. Docket 64 at 15-16. Second, the
magistrate judge found that this court was aware of Thompson's medical and
mental issues as outlined in the presentence report as a potential mitigating
factor, and that Thompson did not identify any other mitigating evidence that
could have been presented. *Id.* at 17. Finally, with respect to counsel's failure
to present witness testimony, the magistrate judge found that Thompson did
not provide any information regarding the willingness of those witnesses to
appear or the substance of their testimony. *Id.* at 17-18. Thompson's only
objections to the magistrate judge's findings are that the witnesses were
available, that counsel chose not to call them, that their testimony was
material, and that counsel chose not to file or submit a sentencing
memorandum because counsel did not obtain information from those
witnesses. Civ. Docket 68 at 12-13.

 First, counsel submitted 32 objections to the presentence report. *See*
PSR App. 1 at 1-5. Although not formally styled as a memorandum, counsel
raised both factual and legal objections to information contained within the
presentence report that were considered, argued, and ruled upon during
Thompson's sentencing hearing. While it is unclear how filing a list of
objections in lieu of an official memorandum would be objectively

unreasonable, Thompson does not explain how he was prejudiced by counsel's choice. Without further elucidation, Thompson's allegation is too vague and conclusory to support his claim for relief.

Second, equally problematic is Thompson's failure to provide any information with respect to what the witnesses' testimony would have provided. Thompson only claims their testimony would have been "material and impeaching," but offers no specific information for this court to consider or what effect that information would have had on Thompson's sentence. *See Tran,* 849 F.2d at 1067 (rejecting petitioner's claim due to insufficiency of specific information). Again, Thompson's conclusory allegations are insufficient to support his claim for relief.

Finally, although Thompson did not object to this finding of the magistrate judge, the court will briefly address Thompson's claim with respect to mitigating evidence. Counsel's affidavit states he had "no recollection of any mitigating evidence that was not submitted." Civ. Docket 49-1 at 2. Further, counsel states that Thompson's "view of mitigation was not mitigation that a Court would consider helpful." *Id.* Finally, counsel notes that "there was little in the facts that mitigated the conduct." *Id.* As discussed, this court reviewed the presentence report that contained, among other things, details regarding Thompson's mental health. For purposes of sentencing, Thompson's mental health is a factor to be considered for sentencing purposes. *See United States v. Austad*, 519 F.3d 431, 436 (8th Cir. 2008) (citing 18 U.S.C. § 3553(a)). This court considered each sentencing factor. *See* CR. Docket 138 at 92. Thompson

has provided no further description of what counsel should have presented to this court for consideration, or how the lack of that information "undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693. Without more, Thompson's argument remains too speculative to support a claim for relief. Thus, Thompson's fifth and sixth claims for relief are denied.

**G.    Seventh Claim for Relief: Ineffective Assistance of Counsel–Failure to Contact and Interview Witnesses**

Thompson's seventh claim for relief is similar to the two immediately preceding, although here Thompson alleges he received ineffective assistance because counsel failed to contact and interview several witnesses, such as family members and friends. These witnesses, Thompson claims, would have refuted statements of the United States' witnesses and provided additional details regarding Thompson's mental health.  Thompson alleges that counsel's failure resulted in a harsher sentence than he otherwise would have received. Magistrate Judge Simko similarly recommended dismissal of this claim because Thompson cannot show that the witnesses were willing to testify or that the substance of their testimony would have been beneficial. Civ. Docket 64 at 19. Thompson's objection identifies five potential witnesses, asserts they were willing to testify, that they possessed material information which could have refuted statements of one of the victims, and that counsel was deficient by failing to contact them. Civ. Docket 68 at 13-14.

As the Eighth Circuit has explained, the decision to call a witness or not is "a 'virtually unchallengeable decision of trial strategy.' " *United States v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011) (quoting *United States v. Watkins*, 486 F.3d

458, 465 (8th Cir. 2007), *vacated on other grounds*, 552 U.S. 1091 (2008)). The same is true regarding the decision to call family members in mitigation. *Walls v. Bowersox*, 151 F.3d 827, 834 (8th Cir. 1998). Additionally, counsel's affidavit states that "Mr. Thompson gave his lawyers no names of witnesses who were not contacted if the person's location was known." Civ. Docket 49-1 at 2. Counsel's affidavit also provides that Thompson's mother was contacted, but she refused to testify. *Id.* Finally, counsel attests that "No witness with helpful sentencing information was made known to [him]." *Id.* Thompson's refutation of counsel's affidavit, at least with respect to his mother's decision not to testify, is that it is simply untrue. Civ. Docket 68 at 13-14.

Even if the court were to conclude that counsel acted in an objectively unreasonable manner by failing to contact and interview these witnesses, however, Thompson would still need to "make a substantial showing that, but for counsel's failure to interview or subpoena the witnesses in question, there is a reasonable probability that the result [of his proceeding] would have been different." *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994). Thompson merely alleges, however, that these witnesses were available and possessed "mitigating, impeaching, material, or exculpatory testimonial evidence due to their extensive and frequent exposure to the victim and her daily activities." Civ. Docket 68 at 14. As explained, Thompson's criminal history and offense level placed him in the highest tier on the advisory guideline table. Thompson has not provided any specific information as to what these witnesses would have said or how a reasonable probability exists that, had these witnesses

testified, the outcome of Thompson's sentencing hearing would have been different. Thus, Thompson cannot demonstrate prejudice under *Strickland*. For these reasons, Thompson's seventh claim for relief is denied.

**H.   Eighth Claim for Relief: Ineffective Assistance of Counsel–Failure to Spend Adequate Time with Thompson, Failure to Explain Details of the Case, Failure to Explain Trial Option**

Thompson's final claim is that counsel did not spend an adequate amount of time with Thompson or explain the details of Thompson's case, and that counsel pressured Thompson into pleading guilty rather than going to trial. Magistrate Judge Simko recommended dismissal of this claim because it was contradicted by the record and otherwise unsubstantiated. Civ. Docket 64 at 20-21. Thompson objected to the magistrate judge's findings, alleging nine instances in which counsel failed to explain aspects of Thompson's case.[4] Civ. Docket 68 at 11. According to Thompson, counsel failed to explain: (1) application of the sentencing guidelines to Thompson's case; (2) the meaning of life imprisonment; (3) consequences of entering a guilty plea; (4) options or alternatives to pleading guilty; (5) the extent of the government's case; (6) "the evidence;" (7) Thompson's rights regarding an appeal; (8) the substance of the plea agreement itself; and (9) Thompson's rights if he decided to enter a guilty plea rather than go to trial. *Id.*

---

[4] The magistrate judge's report included a recommendation that Thompson's claim that he was pressured into entering a guilty plea be dismissed. Civ. Docket 64 at 20. Thompson did not file an objection to this finding. Nonetheless, as already discussed, the record indicates Thompson responded affirmatively to this court's questioning at the plea hearing that he was pleading on his own volition and that no one had attempted to coerce him to entering a guilty plea. *See* CR. Docket 135 at 4-5.

The bulk of Thompson's claims are directly repudiated to the record of the change of plea hearing. First, not only did Thompson indicate that counsel had explained the guidelines' applicability to his case, but this court told Thompson how the guidelines would be used after the presentence report was compiled. CR. Docket 135 at 7-8. Second, this court explained to Thompson that he faced a potential life sentence without the possibility of parole. *Id.* at 6-7; 8. Additionally, Thompson does not explain what he believed "life imprisonment" meant or how his understanding differed from the everyday usage of the phrase. Third, this court fully explained the consequences of entering a guilty plea, as well as what civil rights Thompson may lose as a result of entering a guilty plea. *Id.* at 5. Fourth, Thompson was told he had the option to plead not guilty, as well as the rights he would be entitled to if he went to trial. *Id.* at 9-10. Fifth, Thompson was told he had waived his appellate rights, with the exceptions of a sentence above his advisory guideline range or jurisdictional issues. *Id.* at 8-9. Sixth, Thompson was apprised throughout the plea hearing of the terms and effect of the plea agreement, as well as the fact that it was merely a recommendation to this court. *See, e.g.*, *id.* at 4-5. Seventh, Thompson was apprised of his rights and the consequences of entering a guilty plea rather than going to trial. *Id.* at 9-10.

Not only were each of these points addressed during the change of plea hearing, but Thompson indicated he had read the terms of the plea agreement, discussed the terms of the agreement and his case with his attorney, and that Thompson was fully satisfied with the representation counsel provided. *Id.* at

3-4. Thompson's unsupported contradictions of the record do not overcome the presumption of accuracy attendant to the plea hearing. *See Voytik*, 778 F.2d at 1308 (citing *Blackledge*, 431 U.S. at 75).

The only remaining claims not directly refuted by the record are that counsel did not explain "the evidence" or the extent of the United States' case to Thompson. Counsel's affidavit attests that the evidence against Thompson was "overwhelming," that the option of going to trial was discussed, that the plea agreement represented the best option under the circumstances, and that, in counsel's opinion, there was "no way that the trial of this matter would result in an acquittal." Civ. Docket 30-1 at ¶¶ 11-15; *see also* Civ. Docket 49-1 at 2-3. Given that Thompson affirmed, under oath, that he had a chance to review and discuss his case with counsel and that Thompson was satisfied with counsel's performance, the record appears to support counsel's affidavit. *See* Civ. Docket 135 at 3-4.

Moreover, it is unclear what prejudicial effect Thompson is alleged to have suffered, as this claim consists of only a collection of issues allegedly not discussed by counsel without further explanation. Presumably, Thompson's argument is that he would not have entered the guilty plea. *See Hill v. Lockhart*, 474 U.S. 52 (1985). To satisfy that standard, however, Thompson would have to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. As discussed previously, however, Thompson has not provided any basis for such a finding. *See Thomas v. United States*, 27 F.3d 321, 325 (8th Cir.

1994) ("[Petitioner's] present attempt to withdraw his guilty plea reflects only his dissatisfaction and disappointment that he received a more severe sentence than he anticipated."). For these reasons, Thompson's eighth claim for relief is dismissed.

As discussed, Thompson bears the burden of establishing both prongs of the *Strickland v. Washington* test to succeed on an ineffective assistance of counsel claim. 466 U.S. 668, 687 (1984); *see also Burns v. Gammon*, 260 F.3d 892, 897 (8th Cir. 2001). This court has examined each of the magistrate judge's recommendations with respect to all of Thompson's claims, as well as Thompson's objections to the magistrate judge's findings. All of Thompson's claims for relief are denied.

## I.     Nondispositive Matters

The magistrate judge's report included orders regarding several procedural motions Thompson raised in addition to his ineffective assistance of counsel claims. These pending motions concerned Thompson's request for an extension of deadlines, a request for discovery, and permission to file a supplemental brief in light of the Supreme Court's recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Civ. Docket 64 at 21-24. The magistrate judge granted Thompson's motion for an extension of deadlines, but denied the others.

As discussed, this court may review a magistrate judge's determinations regarding nondispositive matters under the clearly erroneous or contrary to law standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). With respect to

Thompson's motion for discovery, the magistrate judge determined Thompson had not shown "good cause," and that his request for discovery was overly broad. *Id.* at 22. Thompson objected to the magistrate judge's order, arguing "genuine issues of material fact" were presented to this court, which warranted further inquiry. Civ. Docket 68 at 17. Regarding Thompson's motion to file a supplemental brief, the magistrate judge concluded *Alleyne* did not apply to the facts of Thompson's case and, even if it did, the *Alleyne* decision did not apply retroactively on collateral review. Civ. Docket 64 at 23-24. Thompson objected to this order, seeking to "preserve[] the issue under Alleyne pending further resolution and clarification" by other appellate courts and the Supreme Court. Civ. Docket 68 at 17. Both of Thompson's claims are too vague or conclusory to demonstrate that the magistrate judge's determinations were clearly erroneous or contrary to law. As such, the magistrate judge's orders will not be disturbed.

**J.     Evidentiary Hearing and Certificate of Appealability**

A court must order an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the [petitioner] is entitled no relief[.]" 28 U.S.C. § 2255(b). Thus, a petition may be denied without a hearing if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted). As discussed throughout, each of Thompson's ineffective assistance claims are contradicted by the record, inherently

incredible, or conclusory allegations rather than statements of fact. Therefore, no evidentiary hearing is needed.

Finally, when a district court denies a petitioner's § 2255 motion, he must first obtain a certificate of appealability before an appeal of that denial may be entertained. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). This certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(2). A "substantial showing" is one which demonstrates that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). For all the reasons previously discussed, Thompson has not made a substantial showing of the denial of a constitutional right.

**CONCLUSION**

This court has reviewed the magistrate judge's report and recommendation, as well as Thompson's objections. This court rejects each of Thompson's claims for relief. Additionally, no evidentiary hearing on this matter is required. Finally, because Thompson has not made a substantial showing that he has been denied a constitutional right, no certificate of appealability will be issued. Therefore, it is hereby

ORDERED that the magistrate judge's report and recommendations (Civ. Docket 64) are adopted as amended by this opinion. The court overrules

Thompson's objections (Docket 68) and denies Thompson's Amended Motion to Vacate, Set Aside, or Correct his Sentence (Civ. Docket 1; 25).

IT IS FURTHER ORDERED that Thompson's request for an evidentiary hearing is denied.

IT IS FURTHER ORDERED that no certificate of appealability will be issued.

Dated October 6, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE